**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **INTERACTIVE CONTENT ENGINES, LLC,** *Plaintiff,* | § | |
| **v.** | § | **MO:25-CV-00353-DC** |
| **APPLE INC.,** *Defendant.* | § | |

**ORDER**

BEFORE THE COURT is Defendant Apple Inc.'s ("Apple") Motion to Dismiss.[1] Apple argues that Plaintiff Interactive Content Engines, LLC ("ICE") has not adequately pled direct and willful infringement of United States Patent United States Patent Nos. 7,437,472 ("the '472 Patent") and 7,644,136 ("the '136 Patent"). ICE opposes the motion on the grounds that the claim charts attached to the Complaint adequately map each of the claim limitations to the Accused Instrumentalities for purposes of a Rule 12(b)(6) motion.

Having reviewed the briefing, the Court **GRANTS** the Motion to Dismiss. ICE's Complaint is **DISMISSED WITHOUT PREJUDICE**. Plaintiff's request for leave to file an amended complaint is **DENIED**.

**BACKGROUND**

Plaintiff ICE is a limited liability company incorporated in Hawaii, and which has its principal place of business there. ICE brings a suit against Apple for direct and willful infringement of two patents (the "Asserted Patents"): the '472 Patent and the '136 Patent. The inventions covered by the '472 Patent, entitled "Interactive Broadband Server System,"

[1] Doc. 16.

and the '136 Patent, entitled "Virtual File System," "comprise systems and methods for content storage and delivery which are particularly useful for providing Video on Demand (or 'VOD') services, live streaming of content," and similar services.[2] ICE claims that Apple has "interactive broadband server systems and/or virtual file systems in the form of one or more Content Delivery Networks (or 'CDN's') for delivering digital media content to connected subscriber and/or end user devices, including as required by client customers of Apple."[3] These systems make up the Accused Instrumentalities in this case and they are broadly marketed as Apple TV.[4]

ICE accuses Apple of directly infringing on both patents. Specifically, ICE alleges that the Accused Instrumentalities directly infringe on Claim 25 of the '472 Patent, which has the following claim limitations:

1. An interactive broadband server system, comprising: a backbone switch including a plurality of bi-directional ports;
2. a disk array comprising a plurality of disk drives, said disk array storing a plurality of titles sub-divided into a plurality of data chunks which are distributed across said disk array;
3. a plurality of processors, each having a plurality of interfaces including a first interface coupled to a port of said backbone switch, a second interface coupled to at least one disk drive of said drive array, and a third interface for coupling to a network for interfacing a plurality of subscriber devices;
4. wherein each of said plurality of processors is coupled between said backbone switch and said disk array; and
5. a plurality of processes for execution on said plurality of processors, said plurality of processes enabling each processor to retrieve a plurality of data chunks of a requested title from two or more of said plurality of processors, to assemble said requested title, and to transmit said requested title via said third interface.[5]

---

[2] Doc. 1.
[3] *Id.*
[4] *Id.*
[5] *Id.*

Concerning the '136 Patent, ICE argues that the Accused Instrumentalities directly infringe on Claim 1, which has the following claim limitations:

1. A virtual file system, comprising: a plurality of storage processor nodes, each comprising a processor and a plurality of disk drives coupled to said processor;
2. a backbone switch, coupled to said plurality of storage processor nodes, that enables communication between each of said plurality of storage processor nodes;
3. wherein each processor of each of said plurality of storage processor nodes is coupled between said backbone switch and said plurality of disk drives;
4. wherein said plurality of disk drives of each of said plurality of storage processor nodes collectively comprise a disk drive array which stores a plurality of titles, each title divided into a plurality of subchunks which are distributed across said disk drive array in which each subchunk is stored on a disk drive of said disk drive array; and
5. at least one management node coupled to said backbone switch, said at least one management node executing a virtual file manager which manages storage and access of each subchunk of said plurality of titles, and which maintains a plurality of directory entries including a directory entry for each title, each said directory entry comprising a list of subchunk location entries in which each subchunk location entry comprises a storage processor node identifier and a disk drive identifier.[6]

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted."[7] To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[8] "A claim has facial plausibility when the

---

[6] *Id.*
[7] Fed. R. Civ. Pro. 12(b)(6).
[8] *Ashcroft v. Iqbal*, 556 U.S. 666, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 548, 570 (2007)).

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]

On a Rule 12(b)(6) motion, the complaint's factual allegations should be taken as true. Likewise, the facts should be construed in the light most favorable to the non-moving party. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth.[10]

In a patent case, a plaintiff is not required to provide element-by-element pleading of fact for the asserted patents.[11] "To state a viable direct infringement claim, a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim or claims."[12] "The level of detail required to meet that standard depends on multiple factors, not limited to 'the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device.'"[13] However, "a court should dismiss a patent-infringement claim where the plaintiff merely recites that the defendant infringes a claim limitation but fails to identify the parts of

---

[9] *Id.*

[10] *Id.* (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (The Court should not "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

[11] *Sesaco Corp. v. Equinom Ltd.*, No. 1:20-CV-1053-LY, 2022 WL 1546642, at *1 (W.D. Tex. Mar. 11, 2022).

[12] *Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, No. SA-18-CV-1335-XR, 2019 WL 2601347, at *3 (W.D. Tex. June 25, 2019).

[13] *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-cv-00487-ADA, 2022 WL 23469, at *2 (W.D. Tex. Jan. 3, 2022) (quoting *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021)).

the allegedly infringing instrumentality that perform the limitation or allege how the identified parts meet the text of the limitation."[14]

## ANALYSIS

Apple raises three main arguments on this Rule 12(b)(6) motion to dismiss. First, it contends that the pleadings are insufficient to support an infringement claim because ICE merely recites the claim limitations and fails to allege sufficient factual details to state a plausible claim. Second, the motion challenges the conclusory assertion that infringement is supported under the Doctrine of Equivalents. Third, Apple argues that ICE has not pled sufficient facts to establish Apple's pre-suit knowledge of the Asserted Patents or that Apple willfully infringed on them. The Court agrees with all three arguments.

### I. Pleading Claim Limitations

Apple's motion argues that the Complaint does not state a plausible claim of direct infringement because (1) the allegations merely restate the claim limitation language; (2) the pleadings based on "information and belief" lack factual support; and (3) the allegations do not meet the heightened pleading standard required for the "backbone switch" claim limitation. Apple offers these arguments as three independent grounds for dismissal. The Court finds that the Complaint fails to state a claim because it rests on a mere restatement of the claim limitation language without sufficient factual support to plausibly state a claim.

"[A] plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim or claims."[15] While the Court "take[s] the well-pleaded

---

[14] *Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, No. 5:19-CV-243-H, 2021 WL 3030066, at *4 (N.D. Tex. July 2, 2021).

factual allegations in the complaint as true," it "do[es] not credit conclusory allegations or allegations that merely restate the legal elements of a claim."[16] As previously stated, a court "should dismiss a patent-infringement claim where the plaintiff merely recites that the defendant infringes a claim limitation but fails to identify the parts of the allegedly infringing instrumentality that perform the limitation or allege how the identified parts meet the text of the limitation."[17]

When the asserted patents pertain to a complex technology, "a higher level of detail in pleading infringement may . . . be demanded for elements clearly 'material' to novelty and non-obviousness."[18] "In the context of literal infringement, every claim element is material."[19] A plaintiff must, therefore, do more than "attach[] photos of the Accused products and summarily alleg[e] that each and every limitation is satisfied."[20]

It is disputed whether this heightened pleading burden applies in the present case. Apple alleges that the technology at issue is complex and the "backbone switch" element is material because it goes to the novelty of the invention. ICE counters by arguing that the instant technology is not as complex as those present in cases applying that standard. Moreover, ICE challenges the "criticality of the 'backbone switch' for purposes of claim

---

[15] *Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, No. SA-18-CV-1335-XR, 2019 WL 2601347, at *3 (W.D. Tex. June 25, 2019).

[16] *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

[17] *Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, No. 5:19-CV-243-H, 2021 WL 3030066, at *4 (N.D. Tex. July 2, 2021).

[18] *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-00487-ADA, 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022).

[19] *Id.*

[20] *Id.*

allowance."[21] However, the Court need not decide this issue because even if Plaintiff sufficiently pled the "backbone switch" element, the Complaint still fails to adequately plead all of the other claim limitations.

Plaintiff rests on its claim charts to show that it adequately pled the elements of this direct infringement action. However, the claim charts merely restate the claim limitation language for both patents and supplement those conclusory allegations with pictures of the accused products. As the Defendant's charts make clear, ICE fails to show how or why the Accused Instrumentalities meet each of the claim limitations:

| '472 Patent, Claim 25 [sic] | ICE's Complaint Chart |
|---|---|
| An ***interactive broadband server system***, comprising:<br><br>***a backbone switch including a plurality of bi-directional ports***; | "[W]hen the user requests to watch video content from their device, the CDN edge servers first check their local storage for the requested video content. If the content is not found locally, the CDN edge servers forward the request to the origin servers to retrieve the requested video content. Further, in response to receiving the request from the CDN edge servers, origin servers transmit the requested video content to the CDN edge servers. Therefore, in order to facilitate communication between the CDN edge servers and origin servers, ***the interactive broadband server system*** includes ***a switch ("a backbone switch") that includes a plurality of bi-directional ports.***" |
| a ***disk array comprising a plurality of disk drives***, said ***disk array storing a plurality of titles*** sub-divided into a plurality of ***data chunks which are distributed*** | "Therefore, it would be apparent to a person having ordinary skill in the art that the origin servers and the CDN edge servers include a ***plurality of disk drives*** to store the |

[21] Doc. 18.

| | |
|---|---|
| ***across said disk array***; | video/media files. Further, the ***plurality of disks*** across ***collectively constitutes an array ('disk array') for storing video/media files ('plurality of titles').*** Further, Stream segmenter (software used by Apple in HTTP Live Streaming (HLS) to deliver content to the user's device) splits the video/media files into ***segments ('data chunks'), where the segments are distributed across the array.***" |
| a ***plurality of processors***, each having a plurality of interfaces including ***a first interface coupled to a port of said backbone switch, a second interface coupled to at least one disk drive of said drive array, and a third interface for coupling to a network for interfacing a plurality of subscriber devices***; | "Therefore, it would be apparent to a person having ordinary skill in the art that each of origin server and CDN edge servers includes a processor (***collectively constitutes 'a plurality of processors***'), where each processor corresponding to each origin server and CDN edge servers includes ***a first interface coupled to a port of the backbone switch, a second interface coupled to the disk drives of the disk array, a third interface coupled to a network for interfacing a plurality of users' devices.***" |
| wherein each of said ***plurality of processors is coupled between said backbone switch and said disk array***; and | "For example, ***the processor of each origin server and each CDN edge server is coupled to the disk array***. Therefore, it would be apparent to a person having ordinary skill in the art that ***the processor corresponding to each origin server and each CDN edge server is coupled between the backbone switch and the disk array.***" |
| a ***plurality of processes for execution on said plurality of processors***, said ***plurality of processes enabling each processor to retrieve a plurality of*** | "For instance, if the CDN edge server closest to the geographical location of the user does not have the required data chunks, the CDN edge server forwards the request to |

| | |
|---|---|
| ***data chunks of a requested title from two or more of said plurality of processors***, ***to assemble said requested title***, ***and to transmit said requested title via said third interface.*** | the origin servers to retrieve the required segments. Therefore, upon information and belief, the interactive broadband system comprises ***a plurality of processes for execution on the plurality of processors***, ***enabling each processor to retrieve a plurality of data chunks of a requested title from two or more of said plurality of processors***, ***to assemble said requested title***, ***and to transmit said requested title via said third interface.***" |

22

| '136 Patent, Claim 1 | ICE's Complaint Chart |
|---|---|
| A ***virtual file system***, comprising:<br><br>a ***plurality of storage processor nodes***, each comprising ***a processor and a plurality of disk drives coupled to said processor***; | "Apple TV service runs on Apple servers (hereinafter referred to as 'origin servers') and CDN edge servers (***collectively constituting a 'virtual file system'***) for storing and delivering the video/media files to the user's device using HTTP Live Streaming (HLS). Origin servers and CDN edge servers correspond to a ***plurality of storage processor nodes***, with each origin server and each CDN edge server corresponding to a separate storage processor node. Further, it would be apparent to a person having ordinary skill in the art that each origin server and each CDN edge server includes ***a processor and a plurality of disk drives to store the video/media files***. Furthermore, in order to store and retrieve the content from the plurality of disk drives, it would be apparent to a person having ordinary skill in the art that ***the disk drives*** corresponding to each origin server |

[22] Doc. 16.

| | |
|---|---|
| | and each CDN edge server are ***coupled to the respective processor***." |
| a ***backbone switch***, ***coupled to said plurality of storage processor nodes***, that ***enables communication between each of said plurality of storage processor nodes***; | "If the content is not found locally, the CDN edge server forwards the request to the origin server to retrieve the content. Therefore, ***in order to facilitate communication between CDN edge servers and origin servers***, upon information and belief, the virtual file system ***includes a switch ("a backbone switch")*** which is ***coupled to origin servers and CDN edge servers***." |
| wherein ***each processor of each of said plurality of storage processor nodes is coupled between said backbone switch and said plurality of disk drives***; | "For example, t***he processor of each origin server and each CDN edge server is coupled to the plurality of disk drives***. Therefore, it would be apparent to a person having ordinary skill in the art that ***the processor corresponding to each origin server and each CDN edge server is coupled between the backbone switch and plurality of disk drives***." |
| wherein said ***plurality of disk drives of each of said plurality of storage processor nodes collectively comprise a disk drive array which stores a plurality of titles***, each title ***divided into a plurality of subchunks which are distributed across said disk drive array in which each subchunk is stored on a disk drive of said disk drive array***; and | "For example, each origin server and CDN edge server comprises ***a plurality of disk drives, where the plurality of disk drives across origin servers and CDN edge servers collectively constitutes an array ('disk drive array') for storing video/media files ('plurality of titles')***. Further, Stream segmenter (software used by Apple in HTTP Live Streaming (HLS) to deliver content to the user's device) ***splits the video/media files into segments ('subchunks') where the segments are distributed across the array, in which each segment is stored on a disk drive of the*** |

| | |
|---|---|
| | ***array***." |
| at least one ***management node coupled to said backbone switch***, ***said at least one management node executing a virtual file manager which manages storage and access of each subchunk of said plurality of titles***, ***and which maintains a plurality of directory entries including a directory entry for each title***, ***each said directory entry comprising a list of subchunk location entries in which each subchunk location entry comprises a storage processor node identifier and a disk drive identifier***. | "Therefore, upon information and belief, the virtual file system includes ***a management node coupled to the backbone switch***, ***where the management node executes a virtual file manager which manages storage and access of each segment of video/media files***, ***and maintains a plurality of directory entries including a directory entry for each video/media file***, and ***the directory entry comprises a list of segment location entries in which each segment location entry comprises a storage processor node identifier and a disk drive identifier.***" |

[23]

The claim charts offer a near word-for-word recitation of the claim limitations when attempting to map the Accused Instrumentalities. ICE's inclusion of photographs in the claim chart does not overcome this shortcoming. In *De La Vega v. Microsoft Corporation*, the court found that the plaintiff did not adequately plead direct infringement because it only offered screenshots of evidence without an explanation of how the evidence demonstrated that a claim limitation was met.[24] The present case is not functionally different. While ICE technically includes a written explanation to accompany the photographs, it is, in effect, no explanation at all. By copying the claim limitation language, each "explanation" either fails to "identify the parts of the allegedly infringing instrumentality that perform the limitation or

[23] *Id.*
[24] *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *6 (W.D. Tex. Feb. 11, 2020).

allege how the identified parts meet the text of the limitation."[25] Without that information, the Complaint communicates no greater information than the complaint in *De La Vega*. Therefore, dismissal is appropriate. The Motion to Dismiss is **GRANTED** as to the direct infringement claims.

### II. Doctrine of Equivalents

As an alternate basis for liability, ICE alleges generally that "[i]n the alternative, such infringement exists under the Doctrine of Equivalents."[26] Apple's motion challenges the sufficiency of those pleadings.

Under the Doctrine of Equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention."[27] But "boilerplate allegations that the Accused Products infringed 'through the doctrine of equivalents'" are not sufficient under *Twombly/Iqbal*.[28]

Plaintiff's pleadings offer no explanation of how the Accused Instrumentalities infringe on the Asserted Patents through the Doctrine of Equivalents. This argument is a

---

[25] *Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, No. 5:19-CV-243-H, 2021 WL 3030066, at * 4 (N.D. Tex. July 2, 2021).
[26] Doc. 1.
[27] *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).
[28] *Shamoon v. City of San Antonio*, No. SA-18-CV-00718-XR, 2025 WL 1356399, at *5 (W.D. Tex. Apr. 30, 2025); *see also Vytacera Bio, LLC v. CytomX Therapeutics, Inc.*, No. CV 20-333-GBW-CJB, 2023 WL 7125196, at *5 (D. Del. Oct. 30, 2023), *report and recommendation adopted in part*, No. CV 20-333-JLH-CJB, 2024 WL 4512400 (D. Del. Oct. 17, 2024) ("In the Court's view, a plaintiff must plead facts that articulate why it is plausible that a defendant's accused product infringes under the DOE. After all, a claim of patent infringement is subject to the Twombly/Iqbal pleading standard.").

conclusory afterthought that cannot support a plausible claim against Apple. Therefore, the motion is **GRANTED** on this point.

### III. Pre-Suit Knowledge and Willful Infringement

Finally, Apple challenges ICE's claim for pre-suit knowledge and willful infringement of the Asserted Patents. ICE alleges that Apple has been on actual notice of the Asserted Patents since the filing of the Complaint in this case. Alternatively, ICE states that Apple has been, or should have been, aware of the patents since August 24, 2022, when ICE sued Rumble USA for infringing the Asserted Patents.[29] It is ICE's belief that Apple has a policy and practice to not review the patents of others.

Apple offers multiple arguments as to why this claim fails. First, the prior case against Rumble USA was insufficient to provide notice of the patents because Apple was not a party to it and there is not enough information to establish that Apple was aware of it. Second, the public nature of the patents does not provide notice of the patents themselves. Third, the Complaint fails to adequately plead that Apple has a policy and practice of not reviewing the patents of others. Finally, fourth, ICE fails to allege that Apple's conduct was "willful, wanton, malicious, [in] bad faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."[30]

To support a claim for willful infringement, "a plaintiff must plausibly allege the subjective willfulness of a patent infringer, intentional or knowing."[31] That requires showing that "the accused infringer: '(1) knew of the patent-in-suit; (2) after acquiring that

---

[29] Doc. 1.
[30] Doc. 16 (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-04 (2016)).
[31] *Atlas Glob. Techs., LLC v. Sercomm Corp.*, 638 F. Supp. 3d 721, 725 (W.D. Tex. 2022).

knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent.'"[32]

The Court need not wade into whether Apple knew about the patents or was put on notice of their existence because, as stated above, ICE failed to adequately allege their infringement. Infringement is an essential element and therefore the claim fails as a matter of law. The motion is **GRANTED** on this point.

### IV. Leave to Amend

In the alternative, Plaintiff requests that the Court grant it leave to amend its Complaint to address the issues presented in the motion. However, ICE offers no explanation as to how the amended complaint would fix the deficiencies, nor does it attach the amended complaint to the request. Therefore, the Court **DENIES** the request for leave to amend.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Defendant Apple's Motion to Dismiss.[33] Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**.

---

[32] *Id.* (quoting *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019)).

[33] Doc. 16.

Additionally, Plaintiff's request for leave to amend its complaint is **DENIED**.

It is so **ORDERED**.

SIGNED this 5th day of August, 2026.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE